**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

CHRISTOPHER CUSUMANO,

        Plaintiff,

        vs.

LSG 365 BOND STREET, LLC,

        Defendant.

Civil Action No.:  1:22-cv-6801

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Christopher Cusumano, by and through his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges upon personal knowledge and information and belief, as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff Christopher Cusumano ("Mr. Cusumano" or "Plaintiff") brings this action against Defendant LSG 365 Bond Street, LLC ("LSG" or "Defendant") for monetary and emotional damages suffered as a result of violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"). In addition, Mr. Cusumano brings disability discrimination claims under the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq*. ("NYSHRL") and the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107 ("NYCHRL").

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.    This Court has jurisdiction over Plaintiff's claims under the FMLA pursuant to 29 U.S.C. § 2601 *et seq*.

4.     Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391, because the violations which give rise to Plaintiff's claims occurred in this district.

## PARTIES

5.     Plaintiff currently resides in Kings County, within the State of New York.

6.     From July 1, 2019 October 20, 2021, Defendant employed Mr. Cusumano as a Resident Manager. In this role, Mr. Cusumano managed daily operations of three large apartment buildings, coordinated operations, as well as completing routine, hands-on, building maintenance projects due to under-staffing.

7.     Defendant LSG 365 Bond Street, LLC ("LSG") maintains a principal place of business at 365 Bond Street, Brooklyn, New York, 11231.

8.     Plaintiff, at all relevant times herein, worked at Defendant's property located at 365 Bond Street, Brooklyn, New York 11231.

## FACTUAL STATEMENT

9.     On June 10, 2019, Mr. Cusumano was sent an offer letter by Defendant to serve as Resident Manager at 365 Bond Street in Brooklyn, New York, which Mr. Cusumano ultimately excepted.

10.     On July 1, 2019, Mr. Cusumano started his employment with Defendant as the Resident Manager at 365 Bond Street in Brooklyn, New York.

11.     365 Bond Street is one large property that consists of 3 core buildings, with a total 430 residential units, 1 retail space, and an indoor parking garage.

12.     In his role as Resident Manager, Mr. Cusumano managed daily operations of three buildings; managed thirteen unionized staff members (three handmen, six porters, and four

concierge); and coordinated operations with vendors and work orders for all tenants.

13.     Among other things, Mr. Cusumano's was responsible for (i) ensuring all vacant units were turned over/made ready for a new tenant in a timely fashion for the leasing department, (ii) overseeing and assisting with all capital improvements, and (iii) overseeing and assisting with all preventative maintenance for building mechanicals.

14.     Mr. Cusumano worked in this position through October 2021, when he was terminated.

15.     Mr. Cusumano lived on-site and was on call 24-hours per day to ensure shifts had adequate coverage and to respond to emergency situations. He worked long hours, sometimes working 12 hours per day without a break due to under staffing. From October 2019 to September 2021, the building was short one handman who was supposed to cover the evening shift.

16.     Mr. Cusumano's first supervisor was Leah Cataldo, the Property Manager, and Jennifer Jennings, the Portfolio Manager.

17.     In December 2019, Ms. Cataldo conducted Mr. Cusumano's annual review and praised him for his hard work and issued him an end-of-the-year bonus check.

18.     Ms. Cataldo resigned in April 2020 and Fortese Ajeti was hired to replace her as the Property Manager on September 27, 2020 and at this time became Mr. Cusumano's direct supervisor.

19.     After Ms. Cataldo resigned, and before Ms. Ajeti was hired, Ms. Jennings filled in as the Property Manager.

20.     Mr. Cusumano and Ms. Jennings worked well with one another during this time and Ms. Jennings never had any complaints about Ms. Cusumano's work during this time.

3

21.     After Ms. Ajeti began, in September 2020, she frequently mentioned the good work Mr. Cusumano was doing.

22.     By way of example only, over text on several occasions, Ms. Ajeti stated that Mr. Cusumano was performing well. This included, on October 13, 2020: "Great job"; November 5, 2020: "Great work. Thank you"; November 10, 2020: "That's awesome thank you for the update chris. You're the best!"; December 9, 2020: "Let me know what you thought of the meeting. I think you did a great job and you should continue connecting with the team."; December 30, 2020: "That looks amazing (…) Good job!"; January 4, 2021: "You're the best thank you"; February 4, 2021: "U guys did a great job on the sidewalks by the building. Amazing!"; February 9, 2021: "You are doing great thank you chris."; and March 10, 2021: "Thank you for having my back.".

**Mr. Cusumano Takes Short Term Disability and Family Medical Leave**

23.     As part of his benefits, Mr. Cusumano was entitled to 12 weeks of unpaid leave under the Family Medical Leave Act (FMLA), as well as short and long-term disability benefits.

24.     In January 2020, Mr. Cusumano began having health issues that impacted the functioning of his legs, caused him to feel easily fatigued, and resulted in trouble breathing.

25.     Despite the above-mentioned symptoms, Mr. Cusumano continued to work full-time; however, as he would find out, his immune system was weakened, causing his condition to worsen.

26.     Ultimately, Mr. Cusumano was diagnosed with peripheral vascular disease ("PVD") which is a slow and progressive circulation disorder.

27.     As a result of Mr. Cusumano's PVD, his legs started swelling and he suffered from ulcers and open wounds that would not (or were slow) to heal.

28.     Mr. Cusumano's PVD also caused discoloration and scars on his legs, as well as significant pain.

29.     Nearly all of Mr. Cusumano's co-workers knew of his condition and some of his co-workers even helped him ease his symptoms during the workday by helping him place ice packs on his legs during work hours.

30.     Because of his PVD, Mr. Cusumano had swelling in his legs that made walking around painful and caused trouble kneeling and climbing a ladder – which were all regular tasks of his job.

31.     Mr. Cusumano told his supervisor, Ms. Ajeti, of his condition and sent her pictures of his swollen feet on several occasions, starting on or about May 11, 2021.

32.     Despite knowing about Mr. Cusumano's disability, LSG never engaged with Mr. Cusumano about what, if any, reasonable accommodation would allow Mr. Cusumano to perform the essential functions of his jobs more easily.

33.     Mr. Cusumano had tried, from time to time, to take sick days to treat his PVD; however, there was never enough staff to cover his duties, so his supervisor, Ms. Ajeti, would ultimately call him asking him to return to work.

34.     Mr. Cusumano informed the Portfolio Manager, Jennifer Jennings, and Human Resources, on multiple occasions, that the building needed to hire another handyman because there were too many repair issues that took up his working time and pulled him away from his essential managerial responsibilities.

35.     Ms. Jennings refused to hire an additional handyman and told Mr. Cusumano that he needed to find a way to make the time.

36.     It was around this time that Human Resources placed Mr. Cusumano on a

Performance Improvement Plan ("PIP"), claiming that that Mr. Cusumano lacked communication with Ms. Ajeti, which was patently untrue.

37.     Mr. Cusumano regularly communicated with Ms. Ajeti, as evidenced by his nearly daily text exchanges with her throughout the entirety of his employment under her supervision, as well as regular in-person and phone conversations with her.

38.     In fact, LSG knew that any perceived performance issues were directly related to Mr. Cusumano working through debilitating pain in his legs and, in particular, having to perform handyman work that was not part of his essential functions as a manager because LSG understaffing the building.

39.     After nearly 18 months of continuing to work full-time on his feet, despite debilitating pain caused by the PVD, Mr. Cusumano needed to be hospitalized due to complications caused by his PVD.

40.     Specifically, on June 20, 2021, Mr. Cusumano was admitted to the hospital for three days with open wounds on his legs due to edema (swelling caused by fluid trapped in body's tissues) and cellulitis (a common skin infection caused by bacteria and is often associated with a history of PVD).

41.     On June 20, 2021, Mr. Cusumano informed his supervisor, Ms. Ajeti, that he was admitted to the Emergency Room and would not make it into work.

42.     Thereafter, beginning on July 7, 2021, Mr. Cusumano officially went on short term disability and family medical leave, to run concurrently.

43.     While he was out on FMLA leave Mr. Cusumano continued to speak with his supervisor, Ms. Ajeti, almost daily.

44.     In fact, while Mr. Cusumano was on FMLA leave, Ms. Ajeti, often called him and

asked him to assist with different issues on the property or asked him to do handman work in the building because they were understaffed.

45.     On August 20, 2021, Mr. Cusumano's doctor wrote him a note saying Mr. Cusumano was not cleared to return to work because he still suffered from PVD of his lower extremities with open wounds and was at a high risk for sepsis.

46.     In September 2021, when Mr. Cusumano's FMLA leave was set to expire, he still had open wounds that his doctor considered high risk for sepsis and required more time to heal.

47.     Upon information and belief, Mr. Cusumano should have been entitled to up to 26 weeks of short-term disability under New York Short-Term Disability benefits and/or additional unpaid disability leave as a reasonable accommodation for his disability.

**Mr. Cusumano is Unlawfully Denied Additional Disability Leave as an Accommodation and Discriminated Against Based on His Disability**

48.     In September 2021, an FMLA agent for Defendant's third-party benefits administrator, told Mr. Cusumano that he was entitled to an additional two weeks of FMLA benefits but if he needed additional leave beyond those two weeks, he would need to apply for "long term" disability.

49.     Notably, this was wholly untrue, because Mr. Cusumano should have been eligible for up to 26 weeks of short-term disability benefits under New York State Short-Term disability (NY DBL) and possibly even longer if Defendant had a private short-term disability policy.

50.     Regardless, Mr. Cusumano never ended up using more than the 12-weeks of FMLA leave (running concurrently with any short-term disability benefits) because he felt he needed to return to work immediately, regardless of his disability, to protect his job.

51.     The FMLA agent told Mr. Cusumano that he needed to contact Defendant's

Human Resources department because her records showed that he was not eligible for any additional disability leave, despite the Company providing all employees with both short and long term disability benefits in their medical benefits package.

52. Mr. Cusumano then immediately contacted Maria Talbot, Defendant's manager of the Human Resources Health Benefits Department to inquire about what options he had for additional disability leave.

53. Ms. Talbot told Mr. Cusumano that she thought he should have access to additional disability leave (unclear whether she was referring to long-term or additional short-term leave) but explained that there was something wrong with the paperwork on Defendant's end.

54. Shortly after the meeting with Ms. Talbot, Mr. Cusumano received an email memo from Melissa Turner stating that if he did not return to work on September 27, 2021, he would be terminated.

55. Despite needing additional disability leave to allow the wounds on his legs to fully heal, Mr. Cusumano felt he had no choice but to return to work by September 27, 2021, because he did not want to be terminated.

56. Mr. Cusumano, therefore, asked his doctor if he would clear him to return to work.

57. Mr. Cusumano's doctor ultimately gave him a letter that clearing him for work with no restrictions but, because he was still concerned about the state of Mr. Cusumano's medical condition, the doctor made clear that Mr. Cusumano still suffered from PVD and that the wounds are healing slowly. The doctor's note went on to say that Mr. Cusumano was at risk for further complications and still had to undergo a series of tests.

58.     Mr. Cusumano resumed work on or around September 26, 2021.

59.     Mr. Cusumano provided his doctor's note to Ms. Ajeti and Ms. Jennings to advise them of his condition, and he informed them he would use any of his remaining PTO and sick days for upcoming doctor appointments.

60.     Less than three weeks after returning from leave, on October 15, 2021, Ms. Ajeti sent Mr. Cusumano a text saying, "Keep up the good work chris. I feel like you've been much more helpful since you've been back."

61.     Mr. Cusumano was clearly performing well, despite not being provided any additional leave as an accommodation for his disability and/or any other reasonable accommodations, such as light duty work.

**Mr. Cusumano is Unlawfully Terminated**

62.     On October 20, 2021, approximately 25 days after returning from protected FMLA leave, and only five days after receiving the complimentary text from Ms. Ajeti about his work performance, Mr. Cusumano was terminated from his position without explanation.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Retaliation for taking FMLA Leave in Violation of the**
**Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.)**

63.     Mr. Cusumano hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

64.     Mr. Cusumano was an "employee" within the meaning of the FMLA.

65.     LSG was Mr. Cusumano's "employer" within the meaning of the FMLA.

66.     Mr. Cusumano was at all relevant times a qualifying individual who was entitled to FMLA leave.

67.     LSG was at all relevant times a covered employer under the FMLA.

68.     From July 7, 2021, until September 26, 2021, Mr. Cusumano engaged in protected activity by taking medical leave for which he was qualified under the FMLA.

69.     On October 20, 2021, LSG terminated Mr. Cusumano for taking FMLA leave for which he was entitled, which any reasonable employee would find materially adverse.

70.     The temporal proximity between Mr. Cusumano's FMLA leave and his termination – less than one month after returning from leave – clearly creates a causal connection between the protected activity and the adverse action.

71.     LSG's decision to terminate Mr. Cusumano for requesting and taking temporary medical leave for the treatment of his PVD, and complications caused by such condition, amounts to a retaliation against him for invoking his protected rights under the FMLA.

72.     LSG's decision to terminate Mr. Cusumano for requesting and taking temporary medical leave for the treatment of PVD, and complications caused by such condition, amounts to willful within the meaning of the FMLA § 2617(a) such that Mr. Cusumano is entitled to liquidated damages.

73.     As a direct result of LSG's actions, Mr. Cusumano has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Discrimination in Violation of the**
**New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.*)**

74.     Mr. Cusumano hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

75.     Mr. Cusumano was an "employee" within the meaning of the NYSHRL.

76.     LSG was Mr. Cusumano's "employer" within the meaning of the NYSHRL.

77.     Mr. Cusumano is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYSHRL.

78.     Mr. Cusumano is, and has been at all relevant times, otherwise qualified for his position with LSG; he was, and is, able to perform the essential functions of the position with or without a reasonable accommodation.

79.     LSG's decision to terminate Mr. Cusumano for taking temporary medical leave for the treatment of his of PVD, and complications caused by such condition, amounts to discriminatory adverse action motivated by Mr. Cusumano's disability.

80.     LSG knew of Mr. Cusumano's disability but nevertheless committed acts of disparate treatment based on discriminatory motive by terminating him.

81.     By the actions described above, LSG, by and through its employees and/or agents, subjected Mr. Cusumano to discrimination in violation of the NYSHRL.

82.     As a direct result of LSG's actions, Mr. Cusumano has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and fines.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Failure to Provide Reasonable Accommodation in Violation of**
**the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq*.)**

83.     Mr. Cusumano hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

84.     Mr. Cusumano was an "employee" within the meaning of the NYSHRL.

85.     LSG was Mr. Cusumano's "employer" within the meaning of the NYSHRL.

86.     Mr. Cusumano is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYSHRL.

87.     Mr. Cusumano is, and has been at all relevant times, otherwise qualified for his position at LSG; he was, and is, able to perform the essential functions of the position with a reasonable accommodation.

88.     Even if Mr. Cusumano was not qualified for additional FMLA leave, requesting additional temporary leave of absence is a recognized reasonable accommodation under the NYSHRL. *See Manns v. United Airlines*, No. 13-CV-3668, 2016 WL 6826761, at *9 (E.D.N.Y. Nov. 17, 2016) (holding that a leave of absence for a finite period may be a reasonable accommodation if an employee shows the leave will enable him to perform the essential functions of his job when he returns to work); *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 n.6 (2d Cir. 2006) (leave of absence may be reasonable accommodation where "finite" and "reasonably likely to enable the employee to return to work").

89.     Mr. Cusumano provided a doctor's note explaining the reason for the additional leave and that he was unable to return to work yet.

90.     When Mr. Cusumano's FMLA leave expired, he requested additional disability leave to which he was eligible as a reasonable accommodation and was denied.

91.     Upon returning from leave because he was denied the reasonable accommodation of additional leave, Mr. Cusumano explained that he would need to take additional PTO and sick days for doctor appointments and provided a doctor's note to corroborate.

92.     Allowing Mr. Cusumano to take additional leave, as well as take PTO and sick days for his doctor appointments, would not have been an undue burden on LSG. Both would have been restricted temporally and LSG would not have had to keep the position open indefinitely.

93.     LSG knew of Mr. Cusumano's disability but nevertheless failed to accommodate

his disability.

94. As a direct result of LSG's actions, Mr. Cusumano has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Failure to Engage in the Interactive Process in Violation of**
**the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq*.)**

95. Mr. Cusumano hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

96. Mr. Cusumano was an "employee" within the meaning of the NYSHRL.

97. LSG was Mr. Cusumano's "employer" within the meaning of the NYSHRL.

98. Mr. Cusumano is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYSHRL.

99. Mr. Cusumano is, and has been at all relevant times, otherwise qualified for his position with LSG; he was, and is, able to perform the essential functions of the position with a reasonable accommodation.

100. Under the NYSHRL, once an employee submits a request for a disability to be accommodated, an employer is required to work with the employee to determine an effective accommodation. *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015).

101. LSG failed to engage in the interactive process with Mr. Cusumano to determine a reasonable accommodation for his disability. LSG purposely denied Mr. Cusumano access to additional disability leave which he was entitled and made no attempts to discuss any reasonable accommodation that would have allowed Mr. Cusumano to perform the essential functions of his job.

102.    Ultimately, Mr. Cusumano was fired specifically for taking a medically necessary leave of absence and for requesting accommodation to treat his disability.

103.    LSG utterly failed to engage in the interactive process required of them to determine a reasonable accommodation for Mr. Cusumano's disability.

104.    By the acts described above, LSG, by and through its employees and/or agents, failed to engage in the interactive process and retaliated against Mr. Cusumano for requesting an accommodation in violation of the NYSHRL.

105.    As a direct result of LSG's actions, Mr. Cusumano has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Retaliation in Violation of the New York State Human Rights Law,**
**N.Y. Executive Law § 290 *et seq*.)**

106.    Mr. Cusumano hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

107.    Under the NYSHRL it is unlawful for an employer to retaliate against an employee for requesting reasonable accommodation due to a disability.

108.    At all relevant times, Mr. Cusumano was an "employee" of LSG under the NYSHRL.

109.    At all relevant times, LSG was Mr. Cusumano's "employer" under the NYSHRL.

110.    Mr. Cusumano engaged in protected activity when he requested a reasonable accommodation for his disability.

111.    LSG was aware of Mr. Cusumano's request for accommodation.

112.    LSG's decision to terminate Mr. Cusumano within only about 1 month of the

request for an accommodation amounts to a discriminatory adverse action motivated by Mr. Cusumano's status as a member of a protected class.

113.    The temporal proximity of Mr. Cusumano's request for an accommodation and his termination establishes a causal connection. See *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93 (2d Cir. 2020) (quoting G*orman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) (casual connection made "by showing that the protected activity was followed closely in time by the adverse employment action.")

114.    By the actions described above, LSG, by and through its employees and/or agents, subjected Mr. Cusumano to retaliation in violation of the NYSHRL.

115.    As a direct result of LSG's actions, Mr. Cusumano has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Disability Discrimination in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, §§ 8-107(1)(a))**

116.    Mr. Cusumano hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

117.    Mr. Cusumano was an "employee" within the meaning of the NYCHRL.

118.    LSG was Mr. Cusumano's "employer" within the meaning of the NYCHRL.

119.    Mr. Cusumano is, and has been at all relevant times, a qualified individual with a disability, and thus a member of a protected class within the meaning of the NYCHRL.

120.    Mr. Cusumano is, and has been at all relevant times, otherwise qualified for his position with LSG; he was, and is, able to perform the essential functions of the position with or without a reasonable accommodation.

121.    LSG's decision to terminate Mr. Cusumano for taking temporary medical leave for the treatment of his of PVD, and complications caused by such condition, amounts to discriminatory adverse action motivated by Mr. Cusumano's disability.

122.    LSG knew of Mr. Cusumano's disability but nevertheless committed acts of disparate treatment based on discriminatory motive by terminating him.

123.    By the actions described above, LSG, by and through its employees and/or agents, subjected Mr. Cusumano to discrimination in violation of the NYCHRL.

124.    As a direct result of LSG's actions, Mr. Cusumano has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**(Failure to Accommodate in Violation of The New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, §§ 8-107(15))**

125.    Mr. Cusumano hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

126.    Mr. Cusumano is an "employee" within the meaning of the NYCHRL.

127.    LSG was Mr. Cusumano's "employer" within the meaning of the NYCHRL.

128.    Mr. Cusumano is, and has been at all relevant times, a qualified individual with a disability, and thus a member of a protected class within the meaning of the NYCHRL.

129.    The NYCHRL, N.Y.C. Admin Code §§ 8-107(15), prohibits employers from refusing to provide an employee a reasonable accommodation for his disability to allow him to perform the essential requisites of his job.

130.    Mr. Cusumano is, and has been at all relevant times, otherwise qualified for his position with LSG; he was, and is, able to perform the essential requisites of the position with a

reasonable accommodation.

131.    LSG was aware of Mr. Cusumano's disability.

132.    Mr. Cusumano sought a reasonable accommodation for his disability by requesting and taking additional finite disability leave and requesting to use PTO and sick days for doctor appointments to treat his disability.

133.    Allowing Mr. Cusumano to take these reasonable accommodations would not have been an undue burden on LSG because they were restricted in time and would not have required LSG to keep the position open indefinitely.

134.    LSG committed acts of discrimination by failing to reasonably accommodate Mr. Cusumano's disability and then terminating him in violation of the NYCHRL.

135.    By the actions described above, LSG, by and through its employees and/or agents, subjected Mr. Cusumano to discrimination in violation of the NYCHRL.

136.    As a direct result of LSG's actions, Mr. Cusumano suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**(Failure to Engage in the Interactive Process in Violation of The New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107(28)(a))**

137.    Mr. Cusumano hereby repeats and re-alleges each and every one of the above referenced allegations as if fully set forth herein.

138.    At all relevant times, Mr. Cusumano was an "employee" of LSG under the NYCHRL.

139.    At all relevant times, LSG was Mr. Cusumano's "employer" under the NYCHRL.

140. Mr. Cusumano is, and has been at all relevant times, a qualified individual with a disability, and thus a member of a protected class within the meaning of the NYCHRL.

141. Mr. Cusumano is, and has been at all relevant times, otherwise qualified for his position with LSG; he was, and is, able to perform the essential requisites of the position with or without a reasonable accommodation.

142. LSG was aware of Mr. Cusumano's disability.

143. At all relevant times, Mr. Cusumano requested a reasonable accommodation for his disability that was reasonable within the meaning of the NYCHRL.

144. LSG failed to engage in the interactive process, whether formal or informal, to explore options, brainstorm ideas, or learn more about Mr. Cusumano's requests for an accommodation.

145. LSG denied Mr. Cusumano's request for additional disability leave for which he was qualified, and, in essence, denied his requests to use PTO and sick days for doctor appointments by firing him within only 25 days of returning from FMLA leave.

146. LSG utterly failed to engage in the interactive process required of them to determine a reasonable accommodation for Mr. Cusumano's disability.

147. By the acts described above, LSG, by and through its employees and/or agents, failed to engage in the interactive process against Mr. Cusumano for requesting an accommodation in violation of the NYCHRL § 8-107(28)(a).

148. As a direct result of LSG's actions, Mr. Cusumano has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

## AS AND FOR A NINTH CAUSE OF ACTION
**(Retaliation in Violation of New York City Human Rights Law, Title 8 of the
Administrative Code of the City of New York § 8-107(7))**

149.    Mr. Cusumano hereby repeats and re-alleges each and every one of the above
allegations as if fully set forth herein.

150.    Under the NYCHRL § 8-107(7), it is unlawful for an employer to retaliate against
an employee for requesting reasonable accommodation due to a disability.

151.    At all relevant times, Mr. Cusumano was an "employee" of LSG under the
NYCHRL.

152.    At all relevant times, LSG was Mr. Cusumano's "employer" under the NYCHRL.

153.    Mr. Cusumano engaged in protected activity when he requested a reasonable
accommodation for his disability.

154.    LSG was aware of Mr. Cusumano's request for accommodation.

155.    LSG's decision to terminate Mr. Cusumano within only about 1 month of the
request for an accommodation amounts to a discriminatory adverse action motivated by Mr.
Cusumano's status as a member of a protected class.

156.    The temporal proximity of Mr. Cusumano's request for an accommodation and
his termination establishes a causal connection. See *Gorzynski v. Jet Blue Airways Corp.*, 596
F.3d 93 (2d Cir. 2020) (quoting G*orman-Bakos v. Cornell Coop. Extension of Schenectady
County*, 252 F.3d 545, 554 (2d Cir. 2001) (casual connection made "by showing that the
protected activity was followed closely in time by the adverse employment action.")

157.    By the actions described above, LSG, by and through its employees and/or agents,
subjected Mr. Cusumano to retaliation in violation of the NYCHRL.

158.    As a direct result of LSG's actions, Mr. Cusumano has suffered and continues to
suffer harm for which he is entitled to an award of damages, including monetary damages,

compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment and issue:

(a) That Defendant is found to have violated the Family Medical Leave Act, NYSHRL and NYCHRL as to Mr. Cusumano;

(b) That Defendant's violations as described about are found to be willful;

(c) That Defendant further be enjoined to cease and desist from unlawful activities in violation of the FMLA;

(d) An award to Plaintiff for his actual damages in an amount to be determined at trial for lost wages and benefits, including an award of back pay and front pay, based on Defendant's violations of the NYSHRL, NYCHRL, and FMLA;

(e) An award to Plaintiff of compensatory damages in an amount to be determined at trial for the emotional distress sustained as a result of Defendant's violations of the NYSHRL and NYCHRL;

(f) An award to Plaintiff of liquidated damages equal to one hundred percent of Plaintiff's actual damages under the FMLA;

(g) An award of punitive damages to deter future conduct by the Defendant, in an amount to be determined at trial;

(h) An award to Plaintiff of the costs of this action, including reasonable attorneys' fees and case expenses to the fullest extent permitted by law, including but not limited to the NYSHRL, NYCHRL, and FMLA;

(i)   Statutory fines and interest;

(j)   Such other and further relief, in law or equity, as the Court deems necessary and

proper.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury.

Dated:  November 8, 2022
New York, New York

Respectfully submitted,

Rachel M. Haskell, Esq.
Hajar Hasani, Esq.
The Law Office of Christopher Q. Davis,
PLLC
80 Broad Street, Suite 703
New York, New York 10004
646-430-7930 (main)
rhaskell@workingsolutionsnyc.com
hhasani@workingsolutionsnyc.com